# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs December 7, 2010

## STATE OF TENNESSEE v. PAUL WILLIAMS, aka PAUL WILLIAMS EL

**Direct Appeal from the Circuit Court for Carroll County**
**No. 10CR33      C. Creed McGinley, Judge**

---

**No. W2010-00598-CCA-R3-CD   -   Filed April 15, 2011**

---

The defendant, Paul Williams, a/k/a Paul Williams El, was convicted by a Carroll County Circuit Court jury of driving on a cancelled, suspended, or revoked license, second offense, and was sentenced to six months in the county jail.  On appeal, he argues that:  (1) the trial court's method for selecting the alternate juror resulted in the exclusion of the only African-American on the panel; (2) there is newly discovered evidence that should be considered; (3) the evidence was insufficient to sustain his conviction; and (4) the trial court erred in revoking his probation on a previous conviction and in sentencing him.  After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Guy T. Wilkinson, District Public Defender (on appeal); and Paul Williams, aka Paul Williams El, Pro Se (at trial).

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Hansel J. McCadams, District Attorney General; and R. Adam Jowers, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The defendant was indicted on the charge of driving on a cancelled, suspended, or revoked license, second offense, after a Carroll County Sheriff's Department deputy, who was aware of the defendant's driving status, saw the defendant driving an automobile

outside the courthouse.

## State's Proof

At the defendant's trial, Deputy Michael Verner with the Carroll County Sheriff's Department testified that on October 8, 2009, he was on duty at the courthouse, monitoring inmates for general sessions court. As he was escorting three inmates down the stairs, from the second floor window, Deputy Verner saw the defendant drive a green car around court square and park at the hardware store. Deputy Verner asked Deputy Mike Taylor to come to the window to verify what he had witnessed. Deputy Verner said that when he walked out of the courthouse door, he saw the defendant exit the vehicle and Dennis Weber get out of the passenger's side of the vehicle. The defendant and Weber walked across the street and toward the far side of the courthouse before Deputy Verner lost sight of them. Deputy Verner had another deputy take the inmates back to the jail, and he went to track down the defendant for driving on a cancelled, suspended, or revoked license. When he located the defendant in the circuit court clerk's office and placed him under arrest, the defendant said, "'I ain't got to have a license in the State of Tennessee. I'm gonna keep driving.'" A call to the dispatcher's office confirmed that the defendant's license had in fact been suspended.

Deputy Mike Taylor with the Carroll County Sheriff's Department testified that he was on duty at the courthouse on October 8, 2009, when Deputy Verner summoned him from the stairwell window on the north side of the courthouse. Deputy Taylor went to the window in time to see the defendant pull into a parking space in front of the hardware store and exit the vehicle from the driver's side. Another individual got out of the vehicle from the passenger's side.

## Defendant's Proof

Dennis Weber testified that he was in a green Honda Civic, driven by the defendant's son, outside of the hardware store across from the courthouse on October 8, 2009. The defendant exited the hardware store and got into the green Honda, then asked Weber to accompany him inside the courthouse to file some papers. Inside the courthouse, Deputy Verner approached the defendant and placed him under arrest.

On cross-examination, Weber said that he and the defendant's son had stopped at the hardware store to purchase something, and he met the defendant by coincidence. Weber said that when the defendant exited the hardware store, the defendant got into the driver's seat of the vehicle because the defendant's son had gone somewhere. They sat in the car briefly, and then he accompanied the defendant inside to file some papers. They had to enter the courthouse through the side door because the prisoners were exiting the north side doors.

Weber said that he believed the defendant's wife was waiting for the defendant at the back of the hardware store.

The defendant's wife, Pam Williams El, testified that she drove the defendant to the hardware store on October 8, 2009, and while he was in the area, he decided to go to the courthouse to file some papers. Later, someone called to tell her that the defendant was in jail.

On cross-examination, Mrs. Williams El stated that they went to the hardware store because the defendant needed to get "[s]ome kind of tool for dealing with vinyl siding." She said that Dennis Weber called to inform her that the defendant had been arrested and that she had left the hardware store and was on her way home when he called.

At the conclusion of the proof, the jury convicted the defendant of driving on a cancelled, suspended, or revoked license. Thereafter, Melissa Gurley, an employee of the Carroll County Circuit Court Clerk's office, presented judgments from the defendant's previous case in which he was convicted of driving on a suspended license. The jury deliberated again and determined that the present offense was the defendant's second offense of the crime.

## ANALYSIS

### I. Alternate Juror

The defendant first argues that the trial court erred in using a system to select the alternate juror that resulted in exclusion of the only African-American on the panel. He acknowledges that the trial court followed the correct procedures but asserts that the need for a "perception of fairness" necessitates a new trial.

At the motion for new trial, the defendant presented the testimony of Dennis Weber who testified that he was present during the defendant's trial when the sole African-American on the panel was selected as the alternate juror. Weber thought that "it just didn't seem fair" that the only juror of the defendant's race was "thrown off" the jury. Weber said that it made him not trust the judicial system.

We note that the defendant never objected to the composition of the jury panel or interposed an objection at the time the alternate juror was selected and excused. See Tenn. R. App. P. 36(a). Moreover, other than a citation to a case regarding the importance of the appearance of justice in our legal system, the defendant provides no support for his proposition that he should receive a new trial because the court's random selection of the

-3-

only African-American juror on the panel as the alternate gave the appearance of unfairness. See Tenn. Ct. Crim. App. R. 10(b). In any event, Tennessee Rule of Criminal Procedure 24(f)(2) provides the methods for selecting an alternate juror or jurors, which the defendant concedes was properly followed in his case. This issue is without merit.

## II. Newly Discovered Evidence

The defendant argues that the trial court should have granted his motion for new trial based on newly discovered evidence; namely, testimony from the defendant's son that tended to show his innocence.

To be entitled to a new trial on the basis of newly discovered evidence, a defendant must show (1) that he or she used reasonable diligence in seeking the newly discovered evidence; (2) that the new evidence is material; and (3) that the new evidence will likely change the result of the trial. See State v. Nichols, 877 S.W.2d 722, 737 (Tenn. 1994). Whether to grant a new trial on the basis of newly discovered evidence lies within the sound discretion of the trial court. See State v. Caldwell, 977 S.W.2d 110, 117 (Tenn. Crim. App. 1997). "In order to show reasonable diligence, the defendant must demonstrate that neither he [she] nor his [her] counsel had knowledge of the alleged newly discovered evidence prior to trial." Id. (citing Jones v. State, 452 S.W.2d 365, 367 (Tenn. Crim. App. 1970)).

At the motion for new trial, the defendant's son, Elijah Williams, testified that he drove Dennis Weber to town in a Honda Civic the day of the incident because each had some "business to take care of." Elijah Williams said he was driving the vehicle that day, not his father. Asked on cross-examination why he was not in court the day of the defendant's trial, Elijah Williams responded that he was out of town.

At trial, the defendant presented the factual scenario provided by his son at the motion for new trial hearing via Dennis Weber's testimony and his own arguments. During his closing argument, the defendant, who proceeded *pro se* at trial, stated to the jury, "I asked [my son] if he wanted to come and verify the driver, but he has a job that he had to do," which indicates the defendant knew the importance of his son's testimony. The defendant has clearly failed to satisfy the requisites for a new trial based on newly discovered evidence because he knew about the evidence prior to trial, and the trial court did not abuse its discretion in denying the motion.

## III. Sufficiency of the Evidence

The defendant argues that the evidence was insufficient to sustain his conviction because he presented evidence showing that he was not driving that day and because Deputy

-4-

Verner gave inconsistent testimony as to where the deputy was standing when he witnessed the defendant get out of the vehicle. In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

A person commits the offense of driving without a license when he "drives a motor vehicle within the entire width between the boundary lines of every way publicly maintained that is open to the use of the public for purposes of vehicular travel . . . at a time when the person's privilege to do so is cancelled, suspended, or revoked[.]" Tenn. Code Ann. § 55-50-504(a)(1). "A second or subsequent violation of subdivision (a)(1) is a Class A misdemeanor." Id. § 55-50-504(a)(2).

In the light most favorable to the State, the evidence shows that Deputy Verner, watching from the second floor window of the courthouse, saw the defendant drive a green

car around the court square and park it across the street at a hardware store. Deputy Taylor approached the window in time to see the defendant pull a vehicle into a parking space in front of the hardware store and exit from the driver's side. Both deputies saw Dennis Weber exit the vehicle from the passenger's side. A record check confirmed that the defendant's license had been suspended. This evidence was sufficient for a rational trier of fact to find that the defendant drove to the Carroll County Courthouse while his license was cancelled, suspended, or revoked.

The defendant contends that he was not the driver of the vehicle. He points to testimony from his wife that she drove him into town that day, and to testimony from Dennis Weber that Weber rode into town in the green car with the defendant's son and that the defendant only briefly sat in the driver's seat of the green car. This evidence was presented to the jury, and by its verdict, the jury found it not credible. The defendant also contends that Deputy Verner's testimony was inconsistent because Deputy Verner variously testified that he saw the defendant when the deputy was looking out of the second floor window and that he saw the defendant when the deputy was walking out of the courthouse doors with the inmates. We note that a full reading of Deputy Verner's testimony suggests that he saw the defendant driving when he was standing at the second floor window and then saw the defendant exit the vehicle when the deputy was walking out of the courthouse door. Nevertheless, any inconsistencies in the witnesses' testimony were heard and assessed by the jury. The defendant is not entitled to relief.

### IV. Probation Revocation

The defendant lastly argues that the trial court abused its discretion in revoking his probation on his first offense because his present conviction is not final. He also argues that the trial court imposed an excessive sentence of six months.

A trial court is granted broad authority to revoke a suspended sentence and to reinstate the original sentence if it finds by the preponderance of the evidence that the defendant has violated the terms of his or her probation and suspension of sentence. Tenn. Code Ann. §§ 40-35-310, -311. The revocation of probation lies within the sound discretion of the trial court. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). To show an abuse of discretion in a probation revocation case, "a defendant must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" State v. Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient

if it allows the trial court to make a conscientious and intelligent judgment. Harkins, 811 S.W.2d at 82 (citing State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)).

The trial court is expressly authorized by statute to reinstate a defendant's original sentence upon a finding that the defendant has violated the terms of his or her probation. See Tenn. Code Ann. §§ 40-35-310, -311; State v. Hunter, 1 S.W.3d 643, 646 (Tenn. 1999). Upon a finding that a violation has occurred, the trial court may, in its discretion, either: (1) order incarceration; (2) order that the original entire probationary period begin anew; or (3) extend the probationary period by up to two years. Hunter, 1 S.W.3d at 644; Tenn. Code Ann. §§ 40-35-308, -310, -311.

The defendant argues that the trial court abused its discretion in revoking his probation due to his new conviction because his new conviction had not become final in that he still had the right to appeal. We initially observe that the defendant provided no legal authority in support of this proposition. In any event, in addressing this issue, we note that a new arrest and pending charges are proper grounds on which a trial court can revoke a defendant's probation provided that the State establishes sufficient grounds, generally by "produc[ing] evidence in the usual form of testimony," that the defendant committed another offense while on probation. See Harkins, 811 S.W.2d at 83 n.3 (Tenn. 1991); State v. Walter Lee Ellison, Jr., No. 01C01-9708-CR-00361, 1998 WL 272955, at *2 (Tenn. Crim. App. May 29, 1998); see also State v. Michael Chaney, No. 01C01-9801-CC-00010, 1999 WL 97914, at *1 n.2 (Tenn. Crim. App. Feb. 18, 1999). Extrapolating this principle, we would be hard-pressed to conclude that the trial court did not have sufficient evidence before it to find *by a preponderance of the evidence* that the defendant committed the new offense when two officers testified regarding the defendant's driving on a suspended license and the jury found him guilty beyond a reasonable doubt. Therefore, we cannot conclude that the trial court abused its discretion in revoking the defendant's probation.

As a second matter, the defendant argues that the sentence imposed by the trial court was excessive because the court "did not consider any circumstances except for the purpose of consecutive sentencing. It appears the Court's mind was set on a maximum sentence."

Appellate review of misdemeanor sentencing is *de novo* on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. §§ 40-35-401(d),-402(d). This presumption of correctness is conditioned upon the affirmative showing that the trial court considered the relevant facts, circumstances, and sentencing principles. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is on the appealing party to show that the sentence is improper. See Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Cmts.

The trial court is afforded considerable latitude in misdemeanor sentencing. See, e.g., State v. Johnson, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999). When imposing a misdemeanor sentence, the trial court is not required to conduct a sentencing hearing, but it must afford the parties a reasonable opportunity to address the length and manner of service of the sentence. Tenn. Code Ann. § 40-35-302(a). Moreover, the trial court is not required to place specific findings on the record, State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998), but must consider the principles of sentencing and the appropriate enhancement and mitigating factors in determining the percentage of the sentence to be served in actual confinement. Tenn. Code Ann. § 40-35-302(d).

The defendant has failed to show that the sentence imposed by the trial court is improper. It is apparent from the record that the trial court was familiar with the defendant, his background, and the circumstances of the conviction, including that the defendant committed the present offense while on probation from his first offense of driving on a suspended license. Contrary to the defendant's assertion, the trial court did not impose "a maximum sentence," as the maximum sentence for a Class A misdemeanor is eleven months and twenty-nine days, and the defendant was sentenced to six months. We cannot conclude that the trial court exceeded the great flexibility and discretion extended to trial courts in fashioning a misdemeanor sentence.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE